UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| DERWIN ROBINSON<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF CORRECTIONS; KING COUNTY; and individually, ROSIE BRISTER, ROBERT HERRERA, JULIE JOHNSON, TYLER KARVONEN, ELISA KUMAR, ERIN RYLANDS, MICHAEL SCHEMNITZER, ERIN WESTFALL, and Defendants DOE 1-10.<br><br>Defendants. | NO. 2:21-cv-0473<br><br>COMPLAINT FOR DAMAGES<br><br>42 U.S.C. § 1983 and SUPPLEMENTAL STATE CLAIMS<br><br>DEMAND FOR JURY TRIAL |

## I. INTRODUCTION

1. Mr. Robinson served 20 months in prison beyond what the law allowed. Because of the Draconian limitations to RCW 4.100, Mr. Robinson cannot recover for this lost portion of his life by any legal remedy. Even after the appellate and trial courts ordered Mr. Robinson's release from prison, several defendants refused to release him for six more days despite pleas of

COMPLAINT

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
www.MillikanLawFirm.com

Page **1** of **16**

Mr. Robinson, his mother, and his friends. Then, when finally released, other defendants unlawfully and vindictively locked him back up the very next day on bogus charges -the same charges for which he had already been sanctioned by his probation officer and sent to prison. This 13-day unlawful detention was followed by a sham hearing designed to cover up the defendants' misconduct.

## II. PARTIES

2. Plaintiff Derwin Robinson is a citizen of Texas, domiciled at all relevant times in King County and incarcerated in Department of Corrections facilities throughout Washington State.

3. All defendants are named in their individual capacities unless otherwise noted.

4. Washington State Department of Corrections ("DOC") is sued only under claims for which Congress or the Legislature has abrogated sovereign immunity, directly or under a respondeat theory as permitted by state law.

5. King County is sued under state law and as a local authority whose policies were the cause of Mr. Robinson's unlawful detention.

6. Rosie Brister was at all relevant times a Correctional Records Technician ("CRT") in the Release Caseload department of Washington Corrections Center ("WCC").

7. Robert Herrera was at all relevant times a Community Corrections Officer ("CCO") employed by DOC.

8. Julie Johnson was at all relevant times a Correctional Records Supervisor ("CRS") at WCC.

9. Tyler J. Karvonen was at all relevant times an office assistant at WCC Records Unit.

10. Elisa Kumar was at all relevant times a CCO employed by DOC.

COMPLAINT

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **2** of **16**

11. Erin Rylands was at all relevant times a CCO employed by DOC.

12. Michael Schemnitzer was at all relevant times the Community Corrections Supervisor ("CCS") responsible for reasonable cause determinations under DOC Policy 460.130.

13. Erin Westfall was at all relevant times a CCO employed by DOC.

14. Defendants DOE 1-5 are the DOC employees, policy makers, and/or supervisors (including but not limited to two WCC sergeants and one captain) who were notified actually or constructively by Mr. Robinson, his mother, his associates, and the court, of the superior court's Order of Release of Defendant. Defendants DOE may also include officials involved in Mr. Robinson's re-arrest and/or post-dismissal transport from court.

15. Defendants DOE 6-10 are the King County supervisors, policy makers, Release Officer(s), ITR Sergeant(s), and employees who detained and/or transported Mr. Robinson after the superior court had released him, and who ignored his pleas, blocked access to the kite system, and withheld his mental health medication.

### III. JURISDICTION AND VENUE

16. Jurisdiction is established by 28 USC §§ 1331, 1343 and 2201 for claims alleged under 42 USC §1983.

17. Jurisdiction is established by 28 USC § 1367 and exhaustion of appropriate state administrative remedies for all supplemental claims.

18. Venue is proper in the Western District under 28 USC §1391 as most or all defendants are domiciled in the district, most of the events or omissions giving rise to the claims occurred in Mason and King counties.

COMPLAINT

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **3** of **16**

19. All administrative remedies were exhausted by service of a tort claim on the Department of Enterprise Services on September 30, 2020, service of a tort claim on King County on December 18, 2020, and passage of greater than 60 days thereafter.

## IV. **FACTS**

*BACKGROUND FACTS*:

20. In 2015 Mr. Robinson was sentenced to prison and one year of community custody under King County Superior Court cause number 14-1-03404-7. While serving the community custody sentence, Mr. Davis was arrested on October 22, 2016 and charged the following day for violating a no contact order ("VNCO").

21. CCO Kayli Kauzlarich noted a violation of DOC's "obey all laws" community custody requirement. Kauzlarich visited Mr. Robinson in jail and explained she would dismiss the charge with a warning in light of Mr. Robinson's impending pretrial detention and likely return to prison. Kauzlarich recorded in the field file, "Administrative Dismiss Without Prejudice," and dismissed the sanction on November 10, 2016.

22. After a bench trial on the 2016 case, Mr. Robinson was sentenced for felony VNCO based upon two predicate misdemeanor VNCO convictions. Robinson was sentenced to 60 months in total confinement but served approximately 976 days.

23. On April 22, 2019, the Washington State Court of Appeals vacated the felony conviction because it was based on a third offense, one predicate of which had been fictively pleaded under State v. Zhou, 157 Wn.2d 188 (2006). The appeals court mandated, and the trial court ordered, Mr. Robinson's immediate release. State v. Robinson, 8 Wn. App. 2d 629, 640 (2019).

COMPLAINT

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **4** of **16**

*EXCESSIVE CONFINEMENT FACTS*:

24. On Friday June 21, 2019, King County Superior Court Judge Roberts ordered Mr. Robinson's immediate release in open court. Rather than release Mr. Robinson, the transport officers placed him back in the van and placed his legal documents in a sealed bag with this name on it, secured in an area not accessible to detainees.

25. Mr. Robinson was first transported back to the King County jail and kept until Tuesday morning, June 25, 2019. Mr. Robinson notified everyone he could at the jail that he was being held unlawfully, including guards and the person who strip-searched him. Nobody listened and nobody bothered to read Judge Roberts' single-page order stating, "YOU ARE HEREBY ORDERED to release the defendant from jail..." Those who knew or should have known are named as Defendants DOE 6-10.

26. Mr. Robinson was then transported back to WCC. Immediately upon disembarking at WCC, he notified Defendant DOE Corrections Sergeant of his release, that the transport officers had the court order, and that he would like his documents returned to him. The sergeant accused Mr. Robinson of lying and told him to kite the law library for his documents.

27. Mr. Robinson additionally notified the counselor on duty in Unit R2, who diligently notified Defendant Johnson. Robinson also notified two male sergeants, one male captain, and one female captain of his unlawful imprisonment.

28. The next day, Mr. Robinson was not permitted to leave his cell, even for a shower. Nor was he given his prescribed anti-depression medication, which caused him extreme anxiety under the circumstances.

COMPLAINT

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **5** of **16**

29. Mr. Robinson again requested to speak with the counselor. A Defendant DOE guard threatened to pepper spray him if he left his cell while simultaneously explaining the only way to speak to the counselor was to put a kite in the kite box -which was located outside his cell.

30. Despite repeated pleas and notifications by Mr. Robinson, his mother, and his god mother, he would not be released until June 27, 2019, having already served approximately 20 months beyond the maximum 364-day sentence that could have been imposed on a second offense (gross misdemeanor) VNCO.

31. Mr. Robinson's mother, a sophisticated Texas judicial system professional, kept detailed logs of all the calls she made to various DOC personnel between June 21st and 27th, which was necessary because nobody was giving her "a straight answer" as to why her son was still in prison. DOC records corroborate the call logs.

32. On or before June 25, Defendant CRS Johnson had spoken with a counselor at her own facility, WCC. The WCC counselor expressed concern that Mr. Robinson should have already been released from WCC, but Johnson relied upon her irrelevant assumption that Mr. Robinson "didn't return from court with any paperwork" and did nothing. Defendant Johnson did not even mention the problem or the counselor's phone call until DOC Correspondence Unit official, Angela Pettit, emailed the concerns raised by Mr. Robinson's mother.

33. Defendant CRT Brister of WCC spoke to Mr. Robinson's mother, knew Mr. Robinson was confined in WCC, but passed the problem off to WSP on the other side of the Cascade Mountain Range. Defendant Brister appears to have adopted Johnson's "he did not return from court with documents" test for constitutionality of imprisonment. Defendant WCC Office Assistant

COMPLAINT

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **6** of **16**

Karvonen exacerbated this calamity by emailing colleagues that Mr. Robinson should be shipped off to WSP with "no documents to forward at this time."

34. Defendants DOE also knew and did nothing for six days. For her part, WSP's Tammy Scott, once apprised of the situation, actively worked to overcome the deliberate indifference of her colleagues west of the mountains and effectuate Mr. Robinson's release. Mr. Robinson would eventually have his long-sought and just freedom, only to be rearrested without cause.

*RE-ARREST FACTS*:

35. In open court, Mr. Robinson stipulated to amend the vacated portion of the Judgment and Sentence down to one gross misdemeanor in lieu of the felony. The court ordered his release that day, June 21, 2019, with credit for time served. The revised Judgment and Sentence was entered under the same cause number as the vacated felony. There was nothing confusing about it.

36. Mr. Robinson's belated June 27 release was a Thursday evening. Rather than wait -as was permissible- until the following Monday, Mr. Robinson diligently reported to his community corrections officer first thing Friday morning. When the office opened, corrections officers checked Mr. Robinson in and directed him to the urinalysis process. When he emerged from the lavatory, officers capriciously arrested Mr. Robinson without explanation and placed him in the back of a patrol car.

37. Mr. Robinson repeatedly requested from Defendants, CCO Herrera and CCO Rylands, the basis for his arrest. Nobody offered any. Mr. Robinson tried to explain that he had been released from prison the night before. Nobody listened. Finally, Defendant CCO Herrera

COMPLAINT

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **7** of **16**

came out to the DOC transport vehicle that morning in 2019 and told Mr. Robinson he was imposing sanctions for a 2016 VNCO.

38.     Meanwhile, Defendant Rylands simultaneously or retroactively issued a DOC warrant without first performing any of the tasks required by DOC Policy 420.390, the Constitution, and related statutes.  Mr. Robinson had arrived when the office opened on June 28th and was immediately arrested.  The warrant is dated June 28th, thus Rylands drafted it during Mr. Robinson's arrest, or sometime thereafter.

39.     The warrant's "Swift and Certain" notice of "up to 3 days" for "a low level violation" contains an "Offender Signature" line.  Mr. Robinson was never shown the warrant and never signed on the line.  Nor was Mr. Robinson subjected to a 3-day 'swift and certain' detention.

40.     The warrant was predicated upon "Fail to Obey All Laws-Misdemeanors-Other on or about 3/29/2017."  As Mr. Robinson attempted to explain, CCO Kauzlarich had already addressed the conduct underlying the Judgement and Sentence of that date and it had later been vacated by the appeals court.

41.     As required by DOC policy 460.130, Robinson tried to explain that CCO Kauzlarich had entered a technical violation with a warning back in November of 2016, and that he had just been released from prison on the related charge.  No CCO paid any attention and Defendant CCS Schemnitzer later approved the detention in a highly suspect, retroactive, probable cause determination entered into OMNI three days after the unlawful arrest and retroactive warrant.

42.     Defendant Herrera's tone and remarks suggested he was vindictive about Mr. Robinson's appellate victory and was feigning ignorance while refusing to listen.  As though engaged in gamesmanship, Defendant Herrera arbitrarily shifted his justification from the

COMPLAINT

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **8** of **16**

purportedly "never addressed" 2016 VNCO to the 2019 amended Judgment and Sentence. While Mr. Robinson was trying to explain the procedural nature of the 2019 amendment, Herrera slammed the vehicle's door in his face.

43. Defendant Herrera did in fact know that Robinson had been released from prison the day before because DOC records officer, Tammy Scott, had emailed Herrera a copy of the Order of Release on June 27. He even replied, "Sounds good. Thanks Tammy. [-]Robert." The court's "Order of Release of Defendant" is facially unambiguous. On June 27, Scott also forwarded to Herrera the global email she had previously sent, stating "**IMMEDIATE RELEASE DUE TO CHANGE IN SENTENCE**."

*SHAM DOC HEARING FACTS*:

44. Mr. Robinson was held for a pro se DOC hearing on two counts. The first count was for his June 21, 2019 plea amendment down to a misdemeanor VNCO after having already served 976 days (612 of which were superfluous). This count was based upon the same charge CCO Kauzlarich had filed and dismissed in 2016. This count was deliberately mischaracterized as "a conviction on 6/21/2019" despite Mr. Robinson's explanation and abundant records indicating it was a ministerial amendment of the vacated felony under the same cause number.

45. Similarly, the second count put Mr. Robinson in double jeopardy for failing to abide by the no contact order in 2016. Both counts were based upon the same set of facts underlying the tragic sentence he had already over served, and for which he had been charged by CCO Kauzlarich in 2016.

COMPLAINT

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **9** of **16**

46. Beyond the fact that each count was falsely alleged upon already adjudicated conduct, each count was also redundant of the other. Mr. Robinson was never offered counsel to sort out the ruse.

47. At the July 10, 2019 administrative hearing, Defendants CCO Kumar (appearing), and CCO Rylands and Westfall, (submitting documents) misrepresented the validity of these charges to cover up for Ryland's and Herrera's retaliatory unlawful arrest and detention of Mr. Robinson. Defendant Hearings Officer Hastings was vociferously hostile to Mr. Robinson's case and went along with the charade, imposing an ex post facto sanction equal to time served. Hastings explained he was basing his findings on the "new conviction" that was not really a new conviction, which he admitted.

48. This faux sanction was for "FTOAL on 10/22/2016 by DV" -the very same basis for CCO Kauzlarich's 2016 charge and dismissal. Nothing new had happened. Mr. Robinson presented a copy of the appeals court opinion, but Hastings refused to review it.

49. Hastings then stated, "you were just convicted…this is the first time the misdemeanor has been addressed and I'm finding you guilty. Now, would you like to call a witness?" In the United States of America, witnesses are called before verdicts are pronounced - *not afterward*.

50. When Mr. Robinson replied that he would like to call a witness, Hastings lambasted him saying "I feel like you are wasting our time." Under RCW 9.94A.737(3)(A), DOC policies, and Supreme Court precedent, this sham hearing should have been held before, and not after, Herrera unlawfully confined Mr. Robinson.

COMPLAINT

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **10** of **16**

51.     After Hastings made his finding of guilty, he then attempted to dissuade Mr. Robinson from filling out the form to appeal this absurd sanction.  The hearing was recorded and perfectly exemplifies prosecutorial and adjudicative misconduct.

52.     The unlawful 13-day detention was later mischaracterized as a "swift and certain" sanction which is statutorily impossible.  The charging document alleged "High Level Violation," and the stakes were as high as any in the Grisby line of cases.

53.     This unlawful period of confinement also caused Mr. Robinson to become homeless. The host of Mr. Robinson's post-prison housing arrangement had imposed the contingency that he remain free of legal troubles.  The unlawful arrest and detention disqualified Mr. Robinson from the housing.

## V.  FEDERAL CAUSES OF ACTION

### FIRST CLAIM

**EXCESSIVE CONFINEMENT in violation of: 4th Amendment right to be free of unlawful detention; 8th Amendment proscription of cruel and unusual punishment; 14th Amendment liberty interest (against Defendants Brister, DOE, and Johnson, Karvonen, King County).**

54.     The foregoing defendants knew of, disregarded, and disobeyed the black letter of a court order to immediately release Mr. Robinson.  They additionally knew of and disregarded the repeated admonitions of Mr. Robinson, Wanda Robinson, and others.

55.     Both the Department and King County have deficient policies regarding compliance with court orders of release, not the least of which is King Co. Policy 5.04.007(H), which purports to abrogate and supersede the authority of Washington State courts.  King County is liable under Monell v. New York City Dep't of Social Services, 436 U.S. 658 (1978).  To the extent that the

COMPLAINT

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **11** of **16**

named institutional defendants may be shielded by sovereign immunity, the individual policy makers are liable as Defendants DOE.

56. This deliberate indifference rose to the level of unlawful detention and cruel and unusual punishment because all due process had been afforded when the superior court ordered Mr. Davis' release. The deliberate indifference was the cause of Mr. Robinson's unlawful confinement in both King County and contributed to the unlawful WCC detention.

57. The supervising Defendants DOE additionally failed to train their subordinates to recognize, read, and abide by a simple court order, as well as investigate inmate status and provide medications and court documents after transport. Other Defendants DOE prevented Mr. Robinson from communicating his grievances and withheld his mental health medications, adding severe mental anguish to his unlawful detention.

## SECOND CLAIM

**UNLAWFUL RE-ARREST AND CONFINEMENT in violation of: 4th Amendment right to be free of unlawful seizure; 14th Amendment due process and liberty interests (against Defendants DOE, Herrera, Rylands, Schemnitzer).**

58. The foregoing defendants knew of and disregarded the circumstances of Mr. Robinson's release, his prior DOC sanctions, the procedural nature of the 2019 amendment, and the requirements of pre-deprivation process found in DOC policy, Washington statutes, and Supreme Court precedent.

59. To the extent some of the foregoing defendants may claim to have lacked knowledge, they nonetheless owed a constitutional and statutory duty to investigate when Mr. Robinson alerted them to that which they should already have known.

COMPLAINT

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **12** of **16**

60. The apparent ad hoc issuance and/or manipulation of the warrant and procedures attendant thereto also constitutes deprivation of due process. By these and related acts and omissions, all foregoing defendants caused Mr. Robinson's unlawful arrest and 13-day detention, along with the mental anguish of being exonerated and freed from prison then suddenly and illegally incarcerated.

**THIRD CLAIM**

**SHAM POST-FACTO DOC PROSECUTION in violation of: 1st/14th Amendment right of access to justice (see Christopher v. Harbury, 536 U.S. 403 (2002)) and freedom from retaliatory and malicious prosecution; 5th Amendment and state-created proscription of double jeopardy; 14th Amendment due process and state-created statutory and policy-based rights to a fair and impartial hearing (against Defendants Hastings, Herrera, Kumar, Rylands, Westfall).**

61. The foregoing defendants held an unfair post-deprivation hearing when a fair pre-deprivation hearing was required. Defendant Hastings further denied due process in the form of testimony, analysis of the record, access to counsel, and the right to appeal.

62. No defendant recognized or gave any weight to the 2016 adjudication of the same allegations, the ministerial and procedural nature of the 2019 plea change, or the explanation offered by Mr. Robinson. The defendants' conduct was punitive and not remedial.

63. Defendant Hastings' findings were arbitrary and conscience-shocking, calculated to cover up the unlawful conduct of the other DOC defendants. No evidence supported the disciplinary conviction.

64. On information and belief, Defendants Herrera and Rylands instigated the prosecution in vindictive retaliation for Mr. Robinson's appellate victory. Defendant Schemnitzer deprived Mr. Robinson of a pre-confinement probable cause determination and later made a perfunctory retroactive finding.

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

65. By these and related acts and omissions, all foregoing defendants caused Mr. Robinson's unlawful arrest and 13-day detention. They further caused the mental anguish of being exonerated and freed from prison only to then be suddenly and illegally incarcerated.

### FOURTH CLAIM

**CONSPIRACY to violate civil rights under 42 U.S.C § 1983 (against Defendants DOE, Hastings, Herrera, Kumar, Rylands, Schemnitzer).**

66. The foregoing DOC Defendants agreed to act in concert to unlawfully arrest and detain Mr. Robinson. County Defendants DOE agreed to act in concert to unlawfully maintain custody of Mr. Robinson in defiance of the superior court's order.

67. Defendant Hastings agreed and participated after the fact, working to conjure a false justification for the unlawful arrest and detention.

### VI.  STATE CAUSES OF ACTION

### FIFTH CLAIM

**Intentional ("Outrage"), and alternatively negligent, infliction of emotional distress (against Defendant Herrera).**

68. Defendant Herrera intentionally terrorized Mr. Robinson whom he knew to have been released after serving more than 20 months beyond what the law allowed. If Herrera succeeds in feigning ignorance, he will then be liable for NIED.

### SIXTH CLAIM

**Negligence (against Defendants DOC, King County, DOE, Brister, Hastings, Herrera, Johnson, Kumar, Rylands, Schemnitzer.**

69. Defendants established a special relationship by involuntary detention, owed a duty of care to Mr. Robinson in processing his timely release, assessing the lawfulness of his rearrest,

COMPLAINT

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **14** of **16**

and ensuring a fair hearing. Defendants, by their acts and omissions detailed above, breached their duties of care.

### SEVENTH CLAIM

**Common law false arrest and imprisonment (against Defendants DOE, Hastings, Herrera, Rylands, Schemnitzer).**

70. The foregoing defendants intentionally confined Mr. Robinson after his court-ordered release. The unlawful confinement occurred in both the County and DOC. Thereafter, Defendants Herrera, Rylands, and Schemnitzer again unlawfully arrested and confined Mr. Robinson.

### EIGHTH CLAIM

**Common law malicious prosecution (against Defendants DOE, Hastings, Herrera, Kumar, Rylands, Schemnitzer).**

71. The foregoing defendants instigated and prosecuted a punitive proceeding for the improper purpose of justifying their false arrest and fabricated probable cause.

### VII. RELIEF SOUGHT

72. Mr. Robinson hereby demands a trial by jury.

73. Mr. Robinson requests all available compensatory and punitive damages for past, present and future injury and deprivation, as well as pre- and post-judgment interest. Alternatively, presumed damages should be awarded.

74. Mr. Robinson requests the foregoing compensatory and punitive damages in an amount ascertained according to proof, the value of his damages to be determined by a jury of his peers.

75. Mr. Robinson reserves the right to move for injunctive or declaratory relief.

COMPLAINT

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **15** of **16**

76. Mr. Robinson requests an award of reasonable attorney fees and costs pursuant to 42 U.S.C. §1988 and any other statutory or common law basis, and for such other relief to which he may be justly entitled in the wisdom of the Court.

Respectfully Submitted,

DERWIN S. ROBINSON


By s/ Jackson Millikan
Jackson Millikan, WSB# 47786
2540 Kaiser Rd NW
Olympia, WA 98502
360.866.3556
Jackson@MillikanLawFirm.com

COMPLAINT

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **16** of **16**