UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| DERWIN ROBINSON<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF CORRECTIONS; and individually, ROSIE BRISTER, ROBERT HERRERA, JULIE JOHNSON, ERIN RYLANDS, and MICHAEL SCHEMNITZER.<br><br>Defendants. | NO. 2:21-cv-00473-TSZ<br><br>FIRST AMENDED COMPLAINT FOR DAMAGES<br><br>42 U.S.C. § 1983 and SUPPLEMENTAL STATE CLAIMS<br><br>DEMAND FOR JURY TRIAL |

## I. INTRODUCTION

1. Mr. Robinson served 20 months (612 days) in prison beyond what the law allowed. Because of the Draconian limitations to RCW 4.100, Mr. Robinson cannot directly recover for this lost portion of his life by any legal remedy. Even after the appellate and trial courts ordered Mr.

FIRST AMENDED COMPLAINT

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
www.MillikanLawFirm.com

Page **1** of **14**

Robinson's release from prison, several defendants refused to release him for six more days despite pleas of Mr. Robinson, his mother, and his friends.  Then, when finally released, other defendants locked Mr. Robinson back up the very next day, ultimately releasing him with after 13 days with credit for the 612 days he had already unlawfully served.

## II.   PARTIES

2. Plaintiff Derwin Robinson is a citizen of Texas, domiciled at all relevant times in King County and incarcerated in Department of Corrections facilities throughout Washington State.

3. All defendants are named in their individual capacities unless otherwise noted.

4. Washington State Department of Corrections ("DOC") is sued only under claims for which Congress or the Legislature has abrogated sovereign immunity, directly or under a respondeat theory as permitted by state law.

5. Rosie Brister was at all relevant times a Correctional Records Technician ("CRT") in the Release Caseload department of Washington Corrections Center ("WCC").

6. Robert Herrera was at all relevant times a Community Corrections Officer ("CCO") employed by DOC.

7. Julie Johnson was at all relevant times a Correctional Records Supervisor ("CRS") at WCC.

8. Erin Rylands was at all relevant times a CCO employed by DOC.

9. Michael Schemnitzer was at all relevant times the Community Corrections Supervisor ("CCS") responsible for reasonable cause determinations under DOC Policy 460.130.

FIRST AMENDED COMPLAINT

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **2** of **14**

### III. JURISDICTION AND VENUE

10. Jurisdiction is established by 28 USC §§ 1331, 1343 and 2201 for claims alleged under 42 USC §1983.

11. Jurisdiction is established by 28 USC § 1367 and exhaustion of appropriate state administrative remedies for all supplemental claims.

12. Venue is proper in the Western District under 28 USC §1391 as most or all defendants are domiciled in the district, most of the events or omissions giving rise to the claims occurred in Mason and King counties.

13. All administrative remedies were exhausted by service of a tort claim on the Department of Enterprise Services on September 30, 2020, service of a tort claim on King County on December 18, 2020, and passage of greater than 60 days thereafter.

### IV. FACTS

*BACKGROUND FACTS*:

14. In 2015 Mr. Robinson was sentenced to prison and one year of community custody under King County Superior Court cause number 14-1-03404-7. While serving the community custody sentence, Mr. Davis was arrested on October 22, 2016 and charged the following day for violating a no contact order ("VNCO").

15. After a bench trial on the 2016 case, Mr. Robinson was sentenced for felony VNCO based upon two predicate misdemeanor VNCO convictions. Robinson was sentenced to 60 months in total confinement but served approximately 976 days. King County Superior Court Judge Mary Roberts signed a warrant of commitment to DOC "until further order of the Court of Appeals...and/or the Superior Court...."

FIRST AMENDED COMPLAINT

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **3** of **14**

16. On April 22, 2019, the Washington State Court of Appeals vacated the felony conviction because it was based on a third offense, one predicate of which had been fictively pleaded under State v. Zhou, 157 Wn.2d 188 (2006). The appeals court mandated, and the trial court ordered, Mr. Robinson's immediate release. State v. Robinson, 8 Wn. App. 2d 629, 640 (2019). On the afternoon of April 23, 2019, DOC headquarters emailed CRT Tammy Scott with a quote of the holding from the appellate opinion, and the directive, "Monitor for further court proceedings in accordance with this opinion." On June 18, 2019, DOC transported Mr. Robinson to the King County jail in Seattle so that he could attend his hearing of June 21st across the sky bridge in Judge Roberts' court room.

*EXCESSIVE CONFINEMENT FACTS*:

17. On Friday June 21, 2019, Judge Roberts ordered Mr. Robinson's immediate release in open court. Rather than release Mr. Robinson, the dismissed King County defendants placed him in the next available DOC van on June 25, his legal documents in an area not accessible to detainees. DOC claims the legal documents never arrived, though Mr. Robinson saw them placed in a sealed bag with his name on it.

18. DOC admits that, as a matter of policy, transport officers do not review inmate paperwork before transport, but rather deliver the "sealed" envelopes to the records department upon arrival. DOC has no policy for timely releasing inmates who have been ordered released after appellate reversal.

19. Mr. Robinson notified everyone he could at the jail that he was being held unlawfully, including guards and the person who strip-searched him. Nobody listened and nobody

FIRST AMENDED COMPLAINT

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **4** of **14**

bothered to read Judge Roberts' single-page order stating, "YOU ARE HEREBY ORDERED to release the defendant from jail..." Nor did anyone check for other case numbers or DOC holds.

20.  Mr. Robinson was then unlawfully transported back to WCC. Mr. Robinson told transport officers Lee, Miller, and Eagle that he should have been released. Immediately upon disembarking at WCC, Mr. Robinson notified Corrections Sergeant Marsh of his release, that the transport officers had the court order, and that he would like his documents returned to him. Marsh accused Mr. Robinson of lying and told him to kite the law library for his documents. Marsh claims he never received any paperwork.

21.  Mr. Robinson additionally notified the counselor on duty in Unit R3, who diligently notified Defendant Johnson. Transport Sgt. Lee took custody of Mr. Robinson at 8:25 a.m. on June 25th and the van arrived back at WCC sometime during Shift 2, which begins at 6:10 and ends at 14:10. Upon his arrival, Robinson also notified Officers Meyers, Karlson, and Reed. Later that day and in the ensuing days, Mr. Robinson also notified Officers Russel, Boykin, Shaputis, Miles, Moore, Francisco, Marze, Gaddy, and ranking officer Kimberly Ames, whose office is situated off a breezeway between Unit R3 and the gymnasium, of his unlawful imprisonment.

22.  The next day, Mr. Robinson was not permitted to leave his cell, even for a shower. Nor was he given his prescribed anti-depression medication, which caused him extreme anxiety under the circumstances.

23.  Mr. Robinson again requested to speak with the counselor. Either Miles, Moore, Meyers, Karlson, Francisco, Harold, Marze, or Shaputis threatened to pepper spray Mr. Robinson if he left his cell while simultaneously explaining the only way to speak to the counselor was to put a kite in the kite box -which was located outside his cell.

FIRST AMENDED COMPLAINT

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page 5 of 14

24. Despite repeated pleas and notifications by Mr. Robinson, his mother, and his god mother, he would not be released until June 27, 2019, having already served approximately 20 months (612 days) beyond the maximum 364-day sentence that could have been imposed on a second offense (gross misdemeanor) VNCO.

25. Mr. Robinson's mother, a sophisticated Texas judicial system professional, kept detailed logs of all the calls she made to various DOC personnel between June 21st and 27, which was necessary because nobody was giving her "a straight answer" as to why her son was still in prison. DOC records corroborate the call logs.

26. On or before June 25, Defendant CRS Johnson had spoken with a counselor at her own facility, WCC. The WCC counselor expressed concern that Mr. Robinson should have already been released from WCC, but Johnson relied upon her irrelevant assumption that Mr. Robinson "didn't return from court with any paperwork" and did nothing. Defendant Johnson did not even mention the problem or the counselor's phone call until DOC Correspondence Unit official, Angela Pettit, emailed the concerns raised by Mr. Robinson's mother.

27. Defendant CRT Brister of WCC spoke to Mr. Robinson's mother, knew Mr. Robinson was confined in WCC, but passed the problem off to WSP on the other side of the Cascade Mountain Range. Defendant Brister appears to have adopted Johnson's "he did not return from court with documents" test for constitutionality of imprisonment.

28. All WCC Unit R3 corrections officers also knew and did nothing for several days. For her part, WSP's Tammy Scott, once apprised of the situation, actively worked to overcome the deliberate indifference of her colleagues west of the mountains and effectuate Mr. Robinson's release. However, Scott was also charged with monitoring Mr. Robinson's appeal in the first

FIRST AMENDED COMPLAINT

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **6** of **14**

instance and should have not needed to be apprised of that which she had already known for several months. Mr. Robinson would eventually have his long-sought and just freedom in the evening of June 27, 2019, only to be rearrested without cause.

*RE-ARREST FACTS*:

29.     In open court, Mr. Robinson stipulated to amend the vacated portion of the Judgment and Sentence down to one gross misdemeanor in lieu of the felony.  The court ordered his release that day, June 21, 2019, with credit for time served.  The revised Judgment and Sentence was entered under the same cause number as the vacated felony.  There was nothing confusing about it.

30.     Mr. Robinson's belated June 27 release was a Thursday evening.  Rather than wait -as was permissible- until the following Monday, Mr. Robinson diligently reported to his community corrections officer first thing Friday morning.  When the office opened, corrections officers checked Mr. Robinson in and directed him to the urinalysis process.  When he emerged from the lavatory, officers capriciously arrested Mr. Robinson without explanation and placed him in the back of a patrol car.

31.     Mr. Robinson repeatedly requested from Defendants, CCO Herrera and CCO Rylands, the basis for his arrest.  Nobody offered any.  Mr. Robinson tried to explain that he had been released from prison the night before.  Nobody listened.  Finally, Defendant CCO Herrera came out to the DOC transport vehicle that morning in 2019 and told Mr. Robinson he was imposing sanctions for a 2016 VNCO.

32.     Meanwhile, Defendant Rylands simultaneously or retroactively issued a DOC warrant without first performing any of the tasks required by DOC Policy 420.390, the Constitution, and related statutes.  Mr. Robinson had arrived when the office opened on June 28th and was

FIRST AMENDED COMPLAINT

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **7** of **14**

immediately arrested.  The warrant is dated June 28, thus Rylands drafted it during Mr. Robinson's arrest, or sometime thereafter.

33. The warrant's "Swift and Certain" notice of "up to 3 days" for "a low level violation" contains an "Offender Signature" line.  Mr. Robinson was never shown the warrant and never signed on the line.  Nor was Mr. Robinson subjected to a 3-day 'swift and certain' detention.

34. As required by DOC policy 460.130, Robinson tried to explain that CCO Kauzlarich had entered a technical violation with a warning back in November of 2016, and that he had just been released from prison with 612 extra days served on the related charge.  No CCO paid any attention or made the required pre-arrest inquiry into "supervision end date…[or] days remaining on supervision" nor obtained "CCS…authorization…before arrest" as required by Policy 420.130(II)(B).  Defendant CCS Schemnitzer later approved the detention in a highly suspect, retroactive, probable cause determination entered into OMNI three days after the unlawful arrest and retroactive warrant.

35. Defendant Herrera's tone and remarks suggested he was vindictive about Mr. Robinson's appellate victory and was feigning ignorance while refusing to listen.  As though engaged in gamesmanship, Defendant Herrera arbitrarily shifted his justification from the purportedly "never addressed" 2016 VNCO to the 2019 amended Judgment and Sentence.  While Mr. Robinson was trying to explain the procedural nature of the 2019 amendment and the 612 extra days he served, Herrera slammed the vehicle's door in his face.

36. Defendant Herrera did in fact know that Robinson had been released from prison the day before because DOC records officer, Tammy Scott, had emailed Herrera a copy of the Order of Release on June 27.  He even replied, "Sounds good. Thanks Tammy.  [-]Robert."  The court's

FIRST AMENDED COMPLAINT

Law Office of Jackson Millikan
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **8** of **14**

"Order of Release of Defendant" is facially unambiguous. On June 27, Scott also forwarded to Herrera the global email she had previously sent, stating "**IMMEDIATE RELEASE DUE TO CHANGE IN SENTENCE**." Thirteen days later the hearings officer gave Mr. Robinson credit for time served. In the Report of Alleged Violation, Defendant Ryland even recommended "credit for time served during overturned conviction."

## V.   FEDERAL CAUSES OF ACTION

### FIRST CLAIM

**EXCESSIVE CONFINEMENT in violation of: 8th Amendment proscription of cruel and unusual punishment by excessive confinement; 5th and 14th Amendment liberty and due process rights (against Defendants Brister, Burgess, and Johnson).**

37.   The foregoing defendants knew of, disregarded, and disobeyed the black letter of a court order to immediately release Mr. Robinson. They additionally knew of and disregarded the repeated admonitions of Mr. Robinson, Wanda Robinson, and others.

38.   Defendant Brister had an early opportunity to contact the court or notify WCC staff but instead waited and punted to WSP on the other side of the state from where Mr. Robinson was being unlawfully detained.

39.   Defendant Burgess was the WCC Records Manager, and supervisor of Correctional Records Technicians ("CRT"s). Burgess had no policy for communicating whether an inmate was needed to return to DOC. Burgess ratified CRTs' reluctance to request court orders from King County because of a trifling fee. Burgess and DOC had a policy of permitting court returns without paperwork, which ensured Mr. Robinson's rights would be violated.

40.   Judge Roberts' initial judgment and sentence ordered Secretary Sinclair or his designee -in this case Defendants Burgess and Johnson- to confine Mr. Robinson only "until further

FIRST AMENDED COMPLAINT

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **9** of **14**

order of the Court of Appeals…and/or the Superior Court of King County." Records Manager Burgess testified on behalf of DOC that "during that time, we did not review mandates or any kind of court decisions." DOC testified through Burgess that it had a policy of ignoring language in the warrant of commitment that required monitoring the appeal, which policy was created or ratified by Burgess and Scott.

41. Defendant Julie Johnson was the Corrections Records Supervisor (CRS) at WCC. Johnson received a call from Mr. Robinson's WCC custody unit counselor the day he arrived back at WCC and did nothing. Although a Correctional Records Supervisor, Johnson did not seek actual correctional records. Johnson did not go beyond checking the JABS database and did not notify anyone else of the problem as required by DOC Policy 280.500. The second day, only after being notified about Wanda Robinson's phone calls, Johnson suggested that headquarters contact the parent facility in Eastern Washington. At no time did Johnson reach out to King County or the court.

42. DOC headquarters had notified CRT Scott of the vacated felony in April and instructed her to monitor the case on remand. Scott ignored the directive, did not monitor the remanded case, and did not perform any of the release protocols mandated by Judge Roberts' order of commitment and subsequent order of release, or relevant DOC policies until June 27, when she began the Release Audit and emailed CCO Herrera and WCC Records notifying them of Mr. Robinson's urgent need to be released.

43. Upon his June 25, 2019 return to WCC, and during his ensuing unlawful captivity, Mr. Robinson notified the following DOC employees of his right to be free: Ames, Boykin, Gaddy, Francisco, Harold, Karlson, Marsh, Marze, Meyers, Miles, Moore, Reed and Shaputis. None of

FIRST AMENDED COMPLAINT

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page 10 of 14

these corrections officers took any action upon learning of Mr. Robinson's unlawful captivity and several impeded his ability to reach beyond Unit R3 with his message.

44. DOC's policy covering inmate holds and warrants is deliberately indifferent to Mr. Robinson's status as a free citizen. Policy 350.370, "Warrants, Detainers, and Holds," contains only procedures for communicating and executing these instruments. There is no requirement that DOC notify King County of Mr. Robinson's lack of holds, warrants, and detainers.

45. DOC had no policy for releasing inmates prior to "10 days before their ERD ["Early Release Date"]." Policy 350.240. DOC's records policy only requires a file audit "within 4 weeks after…receipt of new information that impacts the sentence structure." Policy 280.500(III)(A). Mr. Robinson was belatedly released hundreds of days before his ERD and needed his file audited on or before the day he was ordered to be free, June 21, 2019.

46. The acts and omissions of the foregoing defendants amounted to deliberate indifference to Mr. Robinson's liberty interests. The policies, lack of policies, supervision, and ratification were moving forces causal to the deliberate indifference of all defendants.

## SECOND CLAIM

**UNLAWFUL RE-ARREST AND CONFINEMENT in violation of: 5th and 14th Amendment and Washington State Constitution Art. 1 Sec. 3 due process and liberty interests (against Defendants Herrera, Rylands, Schemnitzer).**

48. Dr. Donta Harper was, in his own words, "responsible for…implementation of legislation [and] policies." Secretary Sinclair authorized and signed Policy 460.130. Both the written and unwritten polices and their implementation violated RCW 9.94A.737 and Mr. Robinson's due process rights. Defendant Schemnitzer was the designated policymaker for arresting community custody prisoners. Policy 420.390(II)(B).

FIRST AMENDED COMPLAINT

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **11** of **14**

47. Defendants Herrera, Rylands and Schemnitzer carried out the unlawful and policy-contravening practice of arresting Mr. Robinson without consideration of the 612 extra days he had served. Defendants Herrera and Ryland arrested Mr. Robinson prior to the required CCS authorization of Defendant Schemnitzer. Policy 420.390(II)(B)(d).

48. The foregoing supervisory defendants, by their written and unwritten policies, abrogated the statutory discretion of community corrections officers and supervisors to address alleged DOC violations without automatic arrest. Preexisting state law only requires total confinement for a "new" violation behavior. RCW 9.94A.737(4). Mr. Robinson's 2016 misdemeanor judgment and sentence was not new but a procedural adjustment to comply with the court of appeals reversal of his old felony conviction, for which he had already served 612 extra days in DOC custody.

49. The foregoing supervisory defendants, by their written and unwritten policies, eviscerated the statutory requirement of "a hearing within five business days" of arrest by twisting the mandate of the Legislature that such hearing be expedited to "not less than twenty-four hours after written notice of the alleged violation." RCW 9.94A.737(6)(b). This perversion of Legislative intent created a system whereby DOC prosecuting authorities are incentivized to warehouse accused inmates until a hearing docket has available space and hold back written charges until just before the warehoused inmate is to appear before the hearings officer. The putative basis is to accommodate heavy caseloads, but the heavy caseloads are created by the foregoing unconstitutional policy of confining all presumptively high level violators until the hearing.

50. The policies and practices prevented the community custody officers and supervisors from considering the 612 days' over-detention and the procedural nature of the 2016

FIRST AMENDED COMPLAINT

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **12** of **14**

misdemeanor in their decision whether to confine Mr. Robinson. Moreover, the eventual allocation of credit for time served constitutes imposition of sanctions prior to Mr. Robinson's DOC hearing, in contravention of RCW 9.94A.737(4)(a).

51. These policies and supervisory deficiencies were the moving force behind Mr. Robinson -having just spent 612 extra days in DOC custody- being unconstitutionally re-arrested the day after his release and spending 13 more days in custody, only to be released with credit for the horrific amount of time already unjustly served.

## VI.   STATE CAUSES OF ACTION

### THIRD CLAIM

**Negligence (against Defendants DOC, Brister, Herrera, Johnson, Rylands, and Schemnitzer,**

52. Defendants established a special relationship by involuntary detention, owed a duty of care to Mr. Robinson in processing his timely release, a statutory duty to hold a DOC violation hearing within "five business days" of his rearrest (RCW 9.94A.737(6)(b)), and pre-arrest consideration of, and general allocation of, 612 days already served. Defendants, by their acts and omissions detailed above, breached their duties of care.

### FOURTH CLAIM

**Common law false arrest and imprisonment (against Defendants Herrera, Rylands, and Schemnitzer).**

53. The foregoing defendants intentionally confined Mr. Robinson after his court-ordered release. The unlawful confinement occurred in both the County and DOC. Thereafter, Defendants Herrera, Rylands, and Schemnitzer again unlawfully arrested and confined Mr. Robinson. DOC is vicariously liable for the conduct of its employees in the scope of their employment.

FIRST AMENDED COMPLAINT

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

## FIFTH CLAIM

**Common law invasion of privacy by intrusion into seclusion (against Defendants DOC.**

54. A DOC transport officer conducted a strip search of Mr. Robinson on June 25, 2019 at WCC despite his being a free citizen. Such invasion into Mr. Robinson's privacy was highly offensive by virtue of its unconstitutionality. DOC is vicariously liable for the conduct of its employees in the scope of their employment.

### VII.    RELIEF SOUGHT

55. Mr. Robinson hereby demands a trial by jury.

56. Mr. Robinson requests all available compensatory and punitive damages for past, present and future injury and deprivation, as well as pre- and post-judgment interest. Alternatively, presumed damages should be awarded.

57. Mr. Robinson requests the foregoing compensatory and punitive damages in an amount ascertained according to proof, the value of his damages to be determined by a jury of his peers.

58. Mr. Robinson reserves the right to move for injunctive or declaratory relief.

59. Mr. Robinson requests an award of reasonable attorney fees and costs pursuant to 42 U.S.C. §1988 and any other statutory or common law basis, and for such other relief to which he may be justly entitled in the wisdom of the Court.

Respectfully Submitted,

DERWIN S. ROBINSON

By  s/ Jackson Millikan
Jackson Millikan, WSB# 47786

FIRST AMENDED COMPLAINT

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com